**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:21-CR-00156 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| Gabriel PULLIAM. | ) | MARCH 15, 2024 |

**ORDER DENYING MOTION FOR *DAUBERT* HEARING AND OBJECTION TO
TOOLMARK/FIREARM EXPERTS (ECF NO. 754)**

Kari A. Dooley, United States District Judge:

In November 2023, twelve of the sixteen defendants indicted in this matter were scheduled for trial to begin in January 2024. Largely for practical reasons, the case was severed into two trial groups with four defendants scheduled for trial in January 2024 and the remaining eight defendants scheduled for trial in April 2024. However, to avoid redundancy, the Court kept in place all pretrial deadlines for motions *in limine* or other evidentiary issues as to both trials. Defendant Tahjay Love sought to preclude the testimony of firearms or toolmark experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 702, as well as on the grounds that certain firearm expert evidence was belatedly disclosed. *See* ECF Nos. 469; 507. Defendant Pulliam joined in this motion. *See* ECF No. 470. Thus, this Court was previously tasked with its gatekeeping function pursuant to Fed. R. Evid. 702 and *Daubert* as it relates to the Government's intention to call firearm expert witnesses. Although other defendants joined in the motion, none, to include Defendant Pulliam, requested an evidentiary *Daubert* hearing. The defendants did however cite the Court to a number of decisions which consider and discuss the current science, literature, and studies regarding firearm source identification testimony. Ultimately, the Court granted in part the motion, thereby precluding the expert from testifying as to source identification with any specific degree of certainty. *See* ECF No. 589. Defendant Pulliam now asks this Court to

revisit the prior decision, to convene a *Daubert* hearing, and to further limit the scope of the firearms expert testimony to be offered at the second trial in this matter.

Defendant Pulliam relies on the fact that the Court observed in its ruling that no *Daubert* hearing was requested, as well as the recent amendments to Fed. R. Evid. 702 (effective December 1, 2023), which, consistent with existing case law, clarified the nature of the Court's gatekeeping function. *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendments (explaining that the 2023 amendments "clarify and emphasize" that the preponderance of the evidence standard applies to the three reliability inquiries under Fed. R. Evid. 702). *See also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004) (Fed. R. Evid. 702 "incorporates principles established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Supreme Court charged trial courts with a gatekeeping role to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'").

Under the law of the case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stage in the same case." *United States v. Carr*, 557 F.3d 92, 102 (2d Cir. 2009). The doctrine derives from "considerations of fairness to the parties, judicial economy, and the societal interest in finality." *Id.* "A court's reconsideration of its own earlier decision in a case may, however, be justified in compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Id.* The law of the case doctrine is applicable where "the parties had a full and fair opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002). The Court recognizes however that the application of the doctrine is discretionary and does not limit the Court's ability to reconsider its own prior decisions. *United States v. Watts*, 934 F. Supp. 2d 451, 463 (E.D.N.Y.

2013) (declining to apply the law of the case doctrine to case involving severed defendant in advance of second trial "except for the . . . motion that [defendant] joined" in advance of the first trial).

The law of the case doctrine largely mirrors the standards for evaluating a motion for reconsideration. *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (in general, three grounds justify reconsideration of a court's ruling: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *SPGGC, Inc. v. Blumenthal*, 408 F. Supp. 2d 87, 91 (D. Conn. 2006) (internal quotation marks omitted). "It is also not appropriate to use a motion to reconsider solely to re-litigate an issue already decided." *Id.* at 91–92.

Under either construct, Defendant Pulliam has not demonstrated that he is entitled to the relief he seeks.

Preliminarily, Defendant Pulliam could have, but did not, request a *Daubert* hearing. Now, dissatisfied with the ruling he received on the motion he did join, he seeks a second opportunity to litigate this issue. As discussed above, this is not a basis upon which the Court would revisit its prior decision nor a basis to cast aside the law of the case doctrine.

Moreover, the Court's observation as to the scope of the relief requested, to include that no *Daubert* hearing had been requested, was not a suggestion that had such a hearing been requested,

3

the Court's decision would have been different. It was merely an accurate recitation of the motion and the relief sought.

As the Court previously observed, the decisions cited by the Defendants in support of the prior motion included extensive discussion of firearm source identification testimony to include the emerging challenges to the reliability of such testimony under *Daubert* and Fed. R. Evid. 702. The Court believed when rendering its decision, and still believes, that it was sufficiently educated on the issues from the case law to enable it to meet its gatekeeping function. *See United States v. Ashburn*, 88 F. Supp. 3d 239, 248–249 (E.D.N.Y. 2015) (conducting a *Daubert* analysis and performing the requisite gatekeeping function relying on the literature and science discussed in judicial decisions.).

Nor do the amendments to Fed. R. Evid. 702, effective December 1, 2023 (which was prior to the Court's decision on Defendant Love's motion *in limine*), cause this Court to revisit its prior ruling. First, the amendments do not represent an intervening change in the law as they were effective prior to the Court's ruling. More to the point, and as Defendant Pulliam concedes, the amendments to Fed. R. Evid. 702 did not change the substantive law regarding the admission of expert testimony. ECF No. 754 at 4. *See also* Fed. R. Evid. 702 advisory committee's note to 2023 amendments (explaining that the 2023 amendments "clarify and emphasize" that the preponderance of the evidence standard applies to the three reliability inquiries under Fed. R. Evid. 702). The amendments merely made more textually explicit the Court's obligations as they existed and continue to exist under applicable case law. In rendering the prior decision, the Court undertook the required gatekeeping analysis to assess the validity of the methodology behind firearm and toolmark analysis before deciding its reliability and whether and how to limit the scope of the firearms source identification testimony.

Finally, having reviewed the parties' submissions and the emerging case law on this issue that post-date the amendments to Fed. R. Evid. 702, the Court does not believe it committed clear error or that a manifest injustice would result if the Court does not address the issue of firearms source identification testimony anew. *See United States v. Graham*, No. 4:23-cr-6 (TTC), 2024 WL 688256 (W.D. Va. Feb. 20, 2024) (upon extensive and thorough analysis, and after a *Daubert* hearing, concluding that firearm and toolmark source identification science—and testimony based on such science—was sufficiently reliable to be admitted under Fed. R. Evid. 702)

For all of these reasons, Defendant Pulliam's motion for a *Daubert* hearing with respect to the firearms/ballistic expert testimony is DENIED. The Court's Order at ECF No. 589 and the limitations contained therein will continue to govern the testimony of any such experts properly qualified at the trial of the remaining defendants.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of March 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

5